UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HSIEH LIANG YEH, on his own behalf and on behalf of others similarly situated,

                        Plaintiff,

-v-

HAN DYNASTY, INC. d/b/a/ HAN Dynasty;
HAN DYNASTY UPPER WEST SIDE CORP d/b/a Han Dynasty;
HAN DYNASTY NYU CORP d/b/a Han Dynasty;
HAN DYNASTY OF UNIVERSITY CITY, INC. d/b/a Han Dynasty;
3711 MID-ATLANTIC LLC d/b/a Han Dynasty;
3711 MID-ATLANTIC TWO LLC d/b/a Han Dynasty;
NEW HAN DYNASTY INC. d/b/a Han Dynasty;
HAN DYNASTY OF PHILADELPHIA INC d/b/a Han Dynasty;
HAN DYNASTY OF MANAYUNK INC d/b/a Han Dynasty;
HAN DYNASTY OF CHERRY HILL, LLC d/b/a Han Dynasty;
HAN DYNASTY OF BROOKLYN, LLC d/b/a Han Dynasty;
HAN DYNASTY MANAGEMENT INC. d/b/a Han Dynasty;
HD GROUP HOLDINGS, LLC;
TAO-PIN CHIANG;
LUNG-LUNG SHEN CHIANG;
HAN MING CHIANG a/k/a Han Chiang, a/k/a Ming Han Chiang;
HELEN M KWAN;
JUNE KWAN;
MEIDA LIU; and
MARK ALLAN;

                        Defendants.

18 Civ. 6018 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

    In this putative collective and class action, plaintiff Hsieh Liang Yeh, a former chef at a "Han Dynasty" restaurant in Exton, Pennsylvania and at a "Han Dynasty" restaurant on the

1

Upper West Side of Manhattan, brings wage claims against numerous companies bearing the Han Dynasty name and affiliated individuals and entities located in New Jersey, New York, or Pennsylvania. Yeh brings these claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq.*, §§ 650, *et seq.*, and the Pennsylvania Minimum Wage Act of 1968 ("PAMWA"), 43 P.S. §§ 333.101 *et seq.*[1]

Three defendants have answered Yeh's operative Amended Complaint: Han Dynasty, Inc., located in Exton, Pennsylvania ("HDP"); Han Dynasty Upper West Side Corporation, located in New York City ("HDUWS"); and Lung-Lung Shen Chiang (collectively, the "Non-Moving Defendants"). All other defendants have moved to dismiss the claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). These are: Han Dynasty NYU Corp.; Han Dynasty of University City, Inc.; 3711 Mid-Atlantic LLC; New Han Dynasty, Inc.; Han Dynasty of Philadelphia, Inc.; Han Dynasty of Manayunk, Inc.; Han Dynasty of Cherry Hill, LLC; Han Dynasty of Brooklyn, LLC; Han Dynasty Management, Inc.; HD Group Holdings, LLC; Tao-Ping Chiang; Han Ming Chiang; Helen M. Kwan; June Kwan; Meida Liu; and Mark Allan ("Moving Defendants"). For the following reasons, the Court denies the Moving Defendants' 12(b)(1) motion and grants their 12(b)(6) motion.

I. **Background**

   A. **Facts**[2]

Han Dynasty is a chain of Sichuanese restaurants with locations in New York, New

---

[1] Yeh also purports to bring claims under the Pennsylvania Wage Payment and Collection Law, but he does not plead any violation of that statute.

[2] The Court draws these facts principally from the Amended Complaint. Dkt. 21 ("AC"). *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents

2

Jersey, and Pennsylvania. AC ¶ 9. Between approximately November 2, 2014 and January 15, 2018, Yeh worked as a chef at two of these locations. Yeh divides his employment with Han Dynasty into three periods. For each, he alleges that he worked a seven-day work week and took one or two days off between Monday and Friday. *See id.* ¶¶ 134–36.

First, between November 2, 2014 and April 22, 2016, Yeh worked for HDP, in Exton, Pennsylvania. *See id.* ¶¶ 10, 132. During this period, Yeh claims he worked 59.50 hours each week. *See id.* ¶ 134.

Second, between April 23, 2016 and June 7, 2016, Yeh worked for HDUWS in New York. *See id.* ¶¶ 11, 133. During this period, he claims he worked 49.50 hours each week. *See id.* ¶ 135.

Third, between June 8, 2016 and January 15, 2018, Yeh resumed his employment with HDP in Exton, Pennsylvania. *See id.* ¶¶ 10, 132. Between approximately July 1, 2017 and January 15, 2018, Yeh claims that he worked 56.17 hours each week. *See id.* ¶ 136. The AC does not specify the number of hours Yeh worked between June 8 and June 30, 2016.

In addition to HDP and HDUWS, the AC names other corporate defendants. These are: nine other restaurants in the tri-state area doing business under the name Han Dynasty; Han Dynasty Management, Inc., a management company supporting at least one company doing business as Han Dynasty; and HD Group Holdings, a holding company for ownership or assets of at least one company doing business as Han Dynasty. *See id.* ¶¶ 14–23, 60, 63. The complaint does not claim that Yeh worked at any of these other locations. Instead, it alleges that these defendants were his joint employers. It alleges that, with HDP and HDUWS, these

---

incorporated by reference in the complaint."). For purposes of the motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations in the AC as true, drawing all reasonable inferences in Yeh's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

3

corporate entities constitute an enterprise (the "Han Dynasty Enterprise") operating under the 'HAN DYNASTY' brand." *See id.* ¶¶ 97–99. In support, Yeh alleges that the Han Dynasty Enterprise maintains a centralized website for all nine restaurant locations on which visitors can view menus and make reservations, *see id.* ¶¶ 99–100; that each location distributes advertising cards that list all of the locations, *see id.* ¶ 101; that the locations share management, *see id.* ¶ 103; and that the locations "share[] employees and provide[] training of employees such that employees are directed to different restaurant locations for work or for training," *id.* ¶ 102. In addition, he alleges that the HDUWS location has a large kitchen used to train chefs and notes that he himself worked in both the Exton, Pennsylvania and Upper West Side locations.

The AC also names several individual defendants: Tao-Pin Chiang, the president of Han Dynasty Manayunk whom employees allegedly referred to as "Boss," *id.* ¶ 67; Lung-Lung Shen Chiang, an officer of HDP whom employees allegedly referred to as "Lady Boss," *id.* ¶ 71; Han Ming Chiang, the president of HDUWS and allegedly the controlling owner of HDUWS and six different Han Dynasty locations, Han Dynasty Management, Inc., and HD Group Holdings, LLC, *see id.* ¶¶ 79–80; Helen M. Kwan, a principal and corporate secretary for HDUWS, *see id.* ¶¶ 87–88; June Kwan, a principal of HDUWS and Han Dynasty NYU Corp., *see id.* ¶¶ 91–92; Meida Lu, the lead chef who allegedly operates the kitchen at HDUWS, *see id.* ¶ 95; and Mark Allan, whose connection to the events at issue in this case the AC does not elucidate.

Yeh's AC alleges that the defendants collectively neither paid him overtime for his work nor informed him of his hourly pay rate. *See id.* ¶¶ 142–43, 145. The AC notably does not distinguish among the defendants. In addition, Yeh claims, defendants did not give him pay statements containing basic information including, *inter alia*, his name, his employer's name, his

4

rates of pay, any deductions made from his wages, or any allowances claimed. *See id.* ¶ 144.

Yeh proposes to sue both on his behalf and on behalf of all similarly situated employees whom Han Dynasty employed, at any location, during the three years before the filing of the complaint and extending through the judgment of this case. *See id.* ¶ 146.

### B. Procedural History

On July 2, 2018, Yeh filed an initial complaint. *See* Dkt. 1.[3] On September 28, 2018, the Non-Moving Defendants filed an answer. *See* Dkt. 34. On September 28, 2018, the Moving Defendants filed a motion to dismiss for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6), *see* Dkt. 35, and a supporting memorandum of law, *see* Dkt. 36.

On October 19, 2018, Yeh filed this Amended Complaint. *See* Dkt. 38 ("AC"). On November 9, 2018, the Non-Moving Defendants again filed an answer. *See* Dkt. 50. On November 9, 2018, the Moving Defendants again filed a motion to dismiss the AC on the same grounds, *see* Dkt. 47, and a supporting memorandum of law, *see* Dkt. 48 ("Def. Mem.").

On November 9, 2018, the Court also held an initial pretrial conference and set a briefing schedule on the motion to dismiss. On November 30, 2018, Yeh filed a memorandum of law in opposition. *See* Dkt. 51 ("Pl. Mem."). On December 7, 2018, the Moving Defendants filed a reply. *See* Dkt. 52 ("Def. Reply").

## II. Defendants' Rule 12(b)(1) Motion

### A. Applicable Legal Standards

The Moving Defendants argue, under Rule 12(b)(1), that Yeh lacks standing to sue them. A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1)

---

[3] On August 6, 2018, Yeh filed a notice of voluntary dismissal of all claims against defendant H. Dynasty, LLC. *See* Dkt. 24.

when it "lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (citations and quotation marks omitted). "[T]he 'irreducible constitutional minimum' of standing" requires that the plaintiff have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" each element of constitutional standing. *Id.* (citations omitted). Because "the elements of Article III standing are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citations omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561.

"A Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Id.* Such a motion is facial when it is "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Id.* In such cases, at the pleading stage, "the plaintiff has no evidentiary burden," *id.*, and the court accepts as true "all material allegations of the complaint and construe[s] the complaint in favor of the complaining party."

6

*Cortlandt Street*, 790 F.3d at 417 (citations, quotation marks, and alterations omitted). The motion here is facial.[4]

The Second Circuit has explained that a dismissal for lack of Article III standing "is one for lack of subject matter jurisdiction, and without jurisdiction, the district court lacks the power to adjudicate the merits of the case." *Carter*, 822 F.3d at 54–55. Accordingly, "the dismissal must be without prejudice, rather than with prejudice." *Id.* at 54.

### B. Discussion

The Moving Defendants argue that Yeh's AC fails to plead sufficient facts to establish that they were his employers. On this basis, they argue, the AC fails to plead facts supporting his Article III standing to bring claims against them. *See* Def. Mem. at 2.

On this question, the Court holds with Yeh. The AC clearly alleges that Yeh has suffered an injury (non-payment of statutorily required wages) traceable to conduct of his employers and redressable by an award in his favor. That gives him standing to sue entities or persons alleged to have been his employers for relief under the FLSA. *See* 29 U.S.C. § 216(b) ("An action to

---

[4] A 12(b)(1) motion for lack of subject matter jurisdiction is fact-based when the defendant "proffer[s] evidence beyond the Pleading." *Carter*, 822 F.3d at 57. "[A]lthough a district court may consider evidence outside the pleadings on a defendant's motion to dismiss for lack of subject matter jurisdiction, that extrinsic evidence must pertain to jurisdictional facts." *Azeez v. Ramaiah*, No. 14 Civ. 5623 (PAE), 2015 WL 1637871, at *2 (S.D.N.Y. Apr. 9, 2015) (internal quotation marks and citations omitted); *see also Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.") (quotation marks and citations omitted). In opposition to a fact-based 12(b)(1) motion, the plaintiff "has the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees[.]").

The question whether the Moving Defendants were—along with the Non-Moving Defendants—employers of Yeh during some or all of the period covered by the AC is of a different nature. That question goes to the merits. It concerns not a jurisdictional question, but "the existence of a fact . . . that Congress has specified as a prerequisite for the application of a federal statute." *Da Silva v. Kinsho Intern. Corp.*, 229 F.3d 358, 363 (2d Cir. 2000); *cf. id.* at 366 ("[T]he threshold number of employees for application of Title VII is not a jurisdictional issue, at least as long as a plaintiff, as in the pending case, makes a non-frivolous claim that the defendant is a covered employer."). As the Second Circuit has explained, "[W]here the asserted basis for subject matter jurisdiction is also an element of the plaintiff's allegedly federal cause of action, we ask only whether—on its face—the complaint is drawn so as to seek recovery under Federal Law or the Constitution." *Id.* at 364. If the face of the complaint seeks relief under federal law or the Constitution, then the Court must "find a sufficient basis for jurisdiction[ ] and reserve further scrutiny for an inquiry on the merits." *Id.* at 364.

Here, the AC alleges that all defendants were among Yeh's employers and, as such, were responsible for the failure to pay him overtime wages. Whether the facts pled adequately support that the Moving Defendants were among Yeh's employers is properly addressed under Rule 12(b)(6). *Cf. Bleiler v. Cristwood Construction, Inc.*, 72 F.3d 13 (2d Cir. 1995) (finding error in district court's dismissal of an ERISA claim under Rule 12(b)(1) for failing to allege adequately that defendant was an employer within the statutory definition; court holds that case should have been dismissed under Rule 12(b)(6)).

The Court, therefore, denies the Moving Defendants' 12(b)(1) motion in its entirety and

proceeds to their motion under 12(b)(6).

## III. Motion to Dismiss for Failure to State a Claim

### A. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch*, 699 F.3d at 145. That tenet, however, does not apply to legal conclusions. *See Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### B. Discussion

The sections of the FLSA, NYLL, and PAMWA under which Yeh sues impose duties only on a plaintiff's employers. Yeh's AC therefore can state a claim only against parties whom it adequately pleads, consistent with the statutory standards, were his "employer" during the relevant period. The Court therefore examines whether the AC plausibly pleads, as to each Moving Defendant, whether that defendant was an employer of Yeh's.

9

### 1. Legal Standard for Being an "Employer"

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This is a definition with "striking breadth." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992).[5]

The Second Circuit has held that "the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts,' determined by reference not to 'isolated factors, but rather upon the circumstances of the whole activity.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). In addition, "[a]n individual may simultaneously have multiple 'employers' for the purposes of the FLSA, in which case, 'all joint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the [FLSA].'" *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 204–05 (S.D.N.Y. 2014) (citing 29 C.F.R. § 791.2(a)).

---

[5] The NYLL and PAMWA have definitions of "employer" nearly identical to the FLSA's. *Compare* 29 U.S.C. § 203(d) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."), *with* N.Y. Lab. Law § 190(3) ("'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."), *and* 43 P.S.. § 333.103(g) ("'Employer' includes any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe[e]."). Courts in this District "regularly apply the same tests to determine whether entities are joint employers for purposes of the FLSA and NYLL." *Ocampo v. 455 Hosp. LLC*, No. 14 Civ. 9614 (KMK), 2016 WL 4926204, at *5 n.7 (S.D.N.Y. Sept. 15, 2016); *see also Olvera*, 73 F. Supp. 3d at 206 (S.D.N.Y. 2014) ("The statutory standard for employer status under NYLL is nearly identical to that of the FLSA."). And district courts in Pennsylvania apply the FLSA standards to PAMWA claims. *See, e.g., Rapczynski v. DIRECTV*, No. 14 Civ. 2441, 2016 WL 1071022, at *6 (M.D.P.A. Mar. 17, 2016). The Court accordingly applies the FLSA standard to all claims here.

The Second Circuit has identified several sets of factors relevant to the economic reality inquiry. In its narrowest form, this analysis evaluates whether an alleged employer exercised formal control, and at its broadest it evaluates functional control. Accordingly, "the exercise of formal control over employees is sufficient, but not necessary, to adequately allege an employer relationship." *Xiaoyan Liu v. Canteen 82 Inc.*, No. 17 Civ. 7862 (KPF), 2018 WL 6067228, at *5 (S.D.N.Y. Nov. 20, 2018) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).

### a. *Formal Control*

When evaluating formal control, courts consider: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12 (quoting *Bonnette v. Calif. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). "Formal control does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 939 (S.D.N.Y. 2013) (citing *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)) (internal quotation marks omitted).

### b. *Functional Control*

When evaluating functional control, courts may evaluate myriad factors, depending on the circumstances. In *Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988), the Second Circuit inquired whether "the workers depend upon someone else's business . . . or are in business themselves." *Id.* at 1059. And in *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003), it identified the following, non-exclusive, factors:

11

(1) whether [the alleged employers'] premises and equipment were used for the plaintiffs' work; (2) whether the [subcontractors] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the alleged employers'] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which [the alleged employers] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the alleged employers].

*Id.* The Second Circuit has clarified that the *Brock* factors are most relevant for "distinguishing between independent contractors and employees," and that the *Zheng* factors are most relevant in the context of subcontractor relationships, to determine whether a general contractor exerts sufficient control over the subcontractor's workers to support a finding of employer status. *See Greenawalt v. AT&T Mobility LLC*, 642 Fed. App'x 36, 37 (2d Cir. 2016).

### c. *Single-Integrated-Enterprise Liability*

Finally, in the context of affiliated entities within a corporate family, courts in this District have sometimes applied another test: the single-integrated-enterprise test. *See, e.g., In re Domino's Pizza Inc.*, No. 16 Civ. 6274 (AJN), 2018 WL 1587593, at *2 (S.D.N.Y. Mar. 27, 2018) (acknowledging availability of single-integrated-enterprise test under FLSA); *Juarez v. 449 Restaurant, Inc.*, 29 F. Supp. 3d 363, 368 n.3 (S.D.N.Y. 2014) (applying single-integrated-enterprise test, while noting that defendants never challenged the application of the test); *Lopez v. Pio Pio NYC, Inc.*, No. 13 Civ. 440 (HB), 2014 WL 1979930, at *3 (S.D.N.Y. May 15, 2014) ("[T]he shared policy concerns underlying the . . . doctrine and the FLSA urge the theory's application to FLSA claims.") (internal quotation marks and citations omitted). Under this test, courts consider the following factors: "(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Chen v. TYT E. Corp.*, No. 10 Civ. 5288 (PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012) (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)). When applied, the test is usually used to determine

whether employees at different arms of a corporate family shared a common employer.[6]

### 2. Analysis

The AC alleges that the individual Moving Defendants had control over Yeh under the economic reality analysis. It does not so allege as to the corporate Moving Defendants, whom Yeh effectively concedes lacked any direct relationship with him. Instead, Yeh's theory as to these defendants is that they, with HDP and HDUWS, comprised a single integrated enterprise, and as such that they are jointly responsible for Yeh's alleged wage shortfalls.

#### a. Individual Moving Defendants

Among individual defendants, the AC summarily recites, tracking the *Carter* test of formal control, 735 F.2d at 12, that Tao-Ping Chiang, Han Ming Chiang, Helen M. Kwan, and June Kwan each "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at" each of the Han Dynasty restaurants, AC ¶¶ 67, 78, 86, 90, and that Meida Liu met the first three *Carter* factors, *see id.* ¶ 94. Beyond that, the AC makes only limited allegations about individual Moving Defendants, as follows:

*Tao-Ping Chiang*: Chiang was known as "Boss" and is the husband of non-moving defendant Lung-Lung Shen Chiang. *Id.* ¶¶ 67, 73. Tao-Pin Chiang hired Yeh and is president of Han Dynasty of Manayunk, Inc. *Id.* ¶ 74.

---

[6] In *Hart v. Rick's Cabaret*, this Court declined to apply this test, noting that the test would not alter the outcome of the FLSA inquiry at hand and that the Second Circuit had yet to address the applicability of the test to FLSA cases. *Hart*, 967 F. Supp. 2d at 940 n.16. Courts in this District have since increasingly held the test applicable to the FLSA. *See, e.g., Flores v. 201 West 103 Corp.*, 256 F. Supp. 3d 433 (S.D.N.Y. 2018) (applying single-integrated-enterprise test to find that a restaurant group constitutes plaintiff's employer under the FLSA); *Juarez*, 29 F. Supp. 3d at 368 (same); *Lopez*, 2014 WL 1979930, at *3 (same); *Bravo v. Established Burger One, LLC*, No. 12 Civ. 9044 (CM), 2013 WL 5549495, at *8 (S.D.N.Y. Oct. 8, 2013) (same).

*Han Ming Chiang*: Either Lung-Lung Shen Chiang or Han Ming Chiang "have ownership control over all restaurant locations of the Han Dynasty Enterprise," *id.* ¶ 106; both are the general managers who supervise the operations "of all restaurant locations of the Han Dynasty Enterprise," *id.* ¶ 107. Han Ming Chiang "is a principal owner at [sic] least (7) of the restaurant locations within the Han Dynasty Enterprise and provides common management, including labor related activities including at least firing and training." *Id.* ¶ 109. In 2017, at Han Dynasty University City, Lung-Lung Shen Chiang, and Han Ming Chiang oversaw a labor dispute in which approximately eight of the restaurant's chefs were fired. *Id.* ¶ 105.

*Helen M. Kwan*: Kwan is a principal and corporate secretary of HDUWS. *Id.* ¶¶ 87–88.

*June Kwan*: Kwan is a principal of HDUWS and Han Dynasty NYU Corporation. *Id.* ¶¶ 91–92.

*Meida Liu*: Liu is lead chef at HDUWS, operates the kitchen at that location, and "supervises the training of chefs from other of the Han Dynasty restaurant locations." *Id.* ¶ 95.

*Mark Allan*: The AC is silent about Allan's role.[7]

Defendants argue that the AC's allegations against individual Moving Defendants do little more than merely recite the elements of the formal control test. And, they note, to the limited extent the AC contains factual allegations specific to individual defendants, these do not concretely establish that defendant's control over Yeh's employment. Def. Mem. at 8–9.

This critique is valid. A complaint's bare recitation of the legal standard, unsupported by concrete factual allegations, is inadequate to plead that a given individual was an "employer" of a plaintiff. *See, e.g.*, *Bravo*, 2013 WL 5549495, at *7 (dismissing claims against defendants

---

[7] Although allegations made only in a brief are not cognizable on a motion to dismiss, Yeh states there that Allan was treasurer of HD Group Holdings, LLC. Pl. Mem. at 6.

against whom plaintiffs "allege[d] no specific facts, aside from the elements of the economic realities test") (quotation marks omitted); *Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092 (NRB), 2007 WL 4358456, at *5 (Dec. 10, 2007) ("[B]eyond reciting the elements of a joint employer arrangement, plaintiffs have not shown that [defendant] did, in fact, play a role in supervising plaintiffs' work"). And, as to specific individual Moving Defendants, the AC's factual allegations are sparse and ineffective. In particular, the allegation that some, such as Han Ming Chiang, held ownership positions does not by itself make them Yeh's employer. *See, e.g., Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2016 WL 4147241, at *9 (S.D.N.Y. Aug. 3, 2016) (defendant's "executive status," without more, does not make him an "employer" under the FLSA); *Hernandez v. Habana Room, Inc.*, No. 11 Civ. 1264 (RMB) (JCF), 2012 WL 423355, at *3 (S.D.N.Y. Feb. 9, 2012) ("[M]erely having an ownership interest in the employer entity is insufficient to establish individual FLSA liability . . . ."); *Bravo v. Eastpoint Int'l, Inc.*, No. 99 Civ. 9474 (WK), 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001) (allegation that defendant was "principle [sic] owner and chairperson" of company insufficient to establish requisite level of control for a finding of employer status under the FLSA).

The AC also fails the test of functional control as to the individual Moving Defendants. It contains so little detail as to effectively disable the Court from applying the *Zheng* or other functional factors to these persons. For example, that Meida Liu operated the HDUWS kitchen and trained chefs at other Han Dynasty venues could support one factor in the functional test: that Liu supervised Yeh's work. But the AC lacks allegations supporting the others. Similarly, that Han Ming Chiang jointly supervised a labor dispute in which employees were fired is inadequate to show functional control; the AC does not even plead that he was responsible for

that decision. Non-Moving Defendant Lung-Lung Shen Chiang, or other person(s), could have made that decision.

The Court therefore dismisses the claims against the individual Moving Defendants.

### b. *Corporate Moving Defendants*

Yeh alleges that the corporate Moving Defendants comprised a "single integrated enterprise" on the basis that they share ownership, management, and employees. *See* AC ¶¶ 102–103, 106–107. Yeh further alleges that the "Han Dynasty Enterprise has [a] centralized website" which "provides a common platform for menu information, reservations, online ordering and contact." *Id.* ¶¶ 99–100. Various Han Dynasty locations, Yeh alleges, distribute advertising cards that list the locations of each Han Dynasty restaurant. *Id.* ¶ 101. Yeh further alleges that the kitchen at HDUWS is used to train chefs who work in various Han Dynasty restaurants and that he himself "was shared between" HDPA and HDUWS. *Id.* ¶ 102.

Defendants argue that—whatever effect these allegations of an integrated enterprise might have in a case involving multiple plaintiffs—the AC does not plead facts justifying holding Han Dynasty restaurants with no connection to Yeh accountable for wage infractions at the two restaurants at which Yeh worked: in Exton, Pennsylvania, and on the Upper West Side. The AC, they argue, does not plead any facts tending to demonstrate that any of these entities—which managed Han Dynasty restaurants in places such as Brooklyn, New York; Cherry Hill, New Jersey; and Philadelphia, Pennsylvania—are accountable for his employment or pay or had any control (formal or functional) over him. Def. Mem. at 12; Def. Reply at 8.

This critique is valid, too. Courts applying the single integrated enterprise tests to restaurants consider whether separate venues have, *inter alia*, "common décor, name, menu, and marketing; the use of the same employees at multiple locations; the transfer of items between

restaurants; use of the same central payroll office, common storage space and leases; and the distribution of common employee guidelines and procedures across different businesses." *Khereed v. W. 12th Rest. Grp.*, No. 15 Civ. 1363 (PKC), 2016 WL 590233, at *4 (S.D.N.Y. Feb. 11, 2016). But in the end, the decisive factor as to whether a named defendant is responsible for FLSA violations as to a particular plaintiff turns on control, whether formal or functional. Courts will dismiss a complaint against defendants within a broader alleged enterprise that lack a nexus suggesting control of the plaintiff at hand: for example, where the plaintiff fails to "allege that [he] worked at the [other locations in the enterprise], that [he] transferred items between those stores, or that [he] communicated with anyone at those stores." *See In re Domino's Pizza Inc.*, 2018 WL 1587593, at *3.

Such is the case here. Yeh's complaint is devoid of facts suggesting any connection between him and these other entities or the discrete Han Dynasty restaurants they managed. It supplies no basis for bringing them into this lawsuit which, at present, contains allegations of violations of law solely as to him.

The Court, accordingly, grants the motion to dismiss the claims against the corporate Moving Defendants.[8]

## CONCLUSION

For the foregoing reasons, the Court denies the Moving Defendants' 12(b)(1) motion to dismiss but grants their 12(b)(6) motion to dismiss.

The Court respectfully directs the Clerk of Court to terminate the following defendants: Han Dynasty NYU Corp.; Han Dynasty of University City, Inc.; 3711 Mid-Atlantic LLC; New

---

[8] The Court has no occasion to consider the implications that the joinder of any other plaintiff might have for any defendant dismissed today.

17

Han Dynasty, Inc.; Han Dynasty of Philadelphia, Inc.; Han Dynasty of Manayunk, Inc.; Han Dynasty of Cherry Hill; Han Dynasty of Brooklyn; Han Dynasty Management, Inc.; HD Group Holdings, LLC; Tao-Pin Chiang; Han Ming Chiang; Helen M. Kwan; Julie Kwan; Meida Lu; and Mark Allan as parties to this case. The Court also directs the Clerk of Court to terminate the motions pending at Dkt. 35 and 47.

Discovery will now commence. By Friday, February 22, 2019, the parties are to submit a proposed case management plan, consistent with the Court's individual rules, that provides for the close of fact discovery by the end of June 2019.

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: February 14, 2019
New York, New York