UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HSIEH LIANG YEH,

                Plaintiff,

        -against-

HAN DYNASTY, INC. d/b/a Han Dynasty, HAN
DYNASTY UPPER WEST SIDE CORP d/b/a Han
Dynasty, LUNG-LUNG SHEN CHIANG,

            Defendants.

Civil Docket No. 18-CV-06018

(PAE)(HBP)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

William H. Ng
Sanjay V. Nair
Kevin K. Yam
**LITTLER MENDELSON, P.C.**
A Professional Corporation
290 Broadhollow Road, Suite 305
Melville, NY 11745
631.247.4700

*Attorneys for Defendants*
*Han Dynasty Inc., Han Dynasty*
*Upper West Side Corp.*
*and Lung-Lung Shen Chiang*

TABLE OF CONTENTS

PAGE

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     FACTUAL BACKGROUND AND STATEMENT OF UNDISPUTED FACTS ........... 2

III.    ARGUMENT ..................................................................................... 3

        A.      Summary Judgment Standard ............................................... 3

        B.      Plaintiff's Various Wage Claims Are Partially Time-Barred and
                Jurisdictionally-Barred .......................................................... 3

        C.      Plaintiff's Overtime and Minimum Wage Claims Fail As A Matter of Law
                Because He Was Exempt Under Federal, New York and Pennsylvania
                Laws ..................................................................................... 5

                1.      At All Times, Plaintiff Was Compensated On A Salary Basis In
                        Excess Of The Weekly Salary Threshold Requirements Under
                        Federal Law And New York/Pennsylvania Law ...................... 8

                2.      Plaintiff Managed The Restaurant's Kitchen Staff .................. 9

                3.      Plaintiff's Primary Duty Was Management ......................... 11

                        a.      Relative Importance Of Plaintiff's Management Duties
                                Militates Towards A Finding That It Was His Primary Duty ...... 12

                        b.      Time Spent Performing Exempt Work ......................... 13

                        c.      Plaintiff's Relative Freedom From Direct Supervision And
                                Customarily And Regularly Exercised His Discretion As
                                Head Chef .......................................................... 15

                        d.      The Relationship Between Plaintiff's Salary And The
                                Wages Paid to Other Employees For The Kind Of
                                Nonexempt Work ................................................. 16

                4.      Plaintiff's Position As Head Chef Required Him to Regularly And
                        Customarily Direct The Work Of The Kitchen Staff ............... 16

                5.      Plaintiff's Suggestions And Recommendations As To The Hiring
                        And Firing of Kitchen Staff Were Heeded By The Owner ........ 17

        D.      Plaintiff's Claims Under the NYLL For Wage Statement Violations Must
                Be Dismissed Because Plaintiff Received Wage Statements ............... 18

**PAGE**

      E.     Plaintiff's Pay Rate Notice Claim Must Be Dismissed Because Defendants Were Not Obligated To Provide A "New Hire" Wage Notice To Plaintiff For Time Spent Working In New York ............................................................... 18

IV.    CONCLUSION.................................................................................................. 20

TABLE OF AUTHORITIES

Page(s)

CASES

Binder & Binder PC v. Barnhart,
    481 F.3d 141 (2d Cir. 2007).................................................................................................3

Cammon v. City of New York,
    95 N.Y.2d 583 (2000) ........................................................................................................19

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986).............................................................................................................3

Cerutti v. Frito Lay, Inc.,
    777 F. Supp. 2d 920 (W.D. Pa. 2011).................................................................................4

D'Amico v. City of N.Y.,
    132 F.3d 145 (2d Cir. 1998).................................................................................................3

Donovan v. Burger King Corp.,
    675 F.2d 516 (2d Cir. 1982)...............................................................................................14

Encino Motorcars, LLC v. Navarro,
    138 S. Ct. 1134, 200 L. Ed. 2d 433 (2018) ........................................................................7

Goldman v. RadioShack Corp.,
    No. CIV.A. 03-0032, 2006 WL 336020 (E.D. Pa. Jan. 23, 2006) ......................................8

Hicks v. Baines,
    593 F.3d 159 (2d Cir. 2010)................................................................................................3

Itterly v. Family Dollar Stores, Inc.,
    606 F. App'x 643 (3d Cir. 2015) ......................................................................................13

Jackson v. Advance Auto Parts. Inc.,
    362 F. Supp. 2d 1323 (N.D. Ga. 2005) .............................................................................14

Kane v. Cook Bros. Companies,
    No. 3:08CV481, 2009 WL 179728 (M.D. Pa. Jan. 23, 2009) .............................................6

Kelly-Myers v. Mercy Health Sys. of Se. Pennsylvania,
    No. CV 16-5194, 2017 WL 4347605 (E.D. Pa. Sept. 29, 2017) ........................................6

King v. Dolgencorp, Inc.,
    No. 3:09-CV-00146, 2010 WL 9475736 (M.D. Pa. May 6, 2010)......................................7

Krumholz v. Vill. of Northport,
    873 F. Supp. 2d 481 (E.D.N.Y. 2012) ................................................................8

Martinez v. Hilton Hotels Corp.,
    930 F. Supp. 2d 508 (S.D.N.Y. 2013)................................................................6

Mattern & Assocs., L.L.C. v. Seidel,
    No. CIV. 06-36-SLR, 2008 WL 4622421 (D. Del. Oct. 17, 2008) ....................................4

McLean v. Garage Mgmt. Corp.,
    No. 09 CIV. 9325 DLC, 2012 WL 1358739 (S.D.N.Y. Apr. 19, 2012).............................4

Paul v. UPMC Health Sys.,
    No. CIV.A. 06-1565, 2009 WL 699943 (W.D. Pa. Mar. 10, 2009) ....................................6

Perkins v. 199 SEIU United Healthcare Workers E.,
    73 F. Supp. 3d 278 (S.D.N.Y. 2014)................................................................5

Pippins v. KPMG, LLP,
    759 F.3d 235 (2d Cir. 2014)........................................................................8

Ramos v. Baldor Specialty Foods, Inc.,
    687 F.3d 554 (2d Cir. 2012).....................................................................6, 7

Rosales v. Low Bid, Inc.,
    No. 17CV3183ADSSIL, 2018 WL 3468710 (E.D.N.Y. July 3, 2018) .............................5

Scott v. SSP Am., Inc.,
    No. 09-CV-4399, 2011 WL 1204406 (E.D.N.Y. Mar. 29, 2011)...............................12, 14

Tamayo v. DHR Rest. Co., LLC,
    No. 14-CV-9633 (GBD), 2017 WL 532460 (S.D.N.Y. Feb 3, 2017) ........................12, 16

Vanstory-Frazier v. CHHS Hosp. Co., LLC,
    No. CIV.A. 08-3910, 2010 WL 22770 (E.D. Pa. Jan. 4, 2010) ..........................................6

Vasto v. Credico
    LLC, 767 F. App'x 54 (2d Cir. 2019)................................................................7

Weldon v. Kraft, Inc.,
    896 F.2d 793 (3d. Cir. 1990)........................................................................6

Yesmin v. Rite Aid of N.Y. Inc.,
    No. CV 10- 4157(ERK)(RER), 2012 WL 3871735 (E.D.N.Y. Sep 6, 2012)....................9

**PAGE**

**STATUTES**

43 Pa. Stat. Ann. § 333.104 ...................................................................................6

43 Pa. Stat. Ann. § 333.105 ...................................................................................6

29 U.S.C. 213(a)(1) .................................................................................................5

N.Y. Lab. Law § 195(1)(a) ..............................................................................18, 19

N.Y. Lab. Law. § 198(1-b) ...............................................................................5, 20

NYLL 195(3) ........................................................................................................18

NYLL § 195(3) ......................................................................................................18

**OTHER AUTHORITIES**

29 C.F.R. 41.105 ...................................................................................................17

29 C.F.R. 541.100(a)(3) .......................................................................................17

29 C.F.R. 541.100(a)(4) .......................................................................................17

29 C.F.R. § 541.100(a) .......................................................................................7, 8

29 C.F.R. § 541.102 ....................................................................................9, 10, 11

29 C.F.R. § 541.106(a) .....................................................................................12, 15

29 C.F.R. § 541.106(b) .........................................................................................12

29 C.F.R. § 541.700 .............................................................................................14

29 C.F.R. § 541.700(a) ....................................................................................11, 12

12 NYCRR § 146-3.2(c)(1)(i)(e)(1)(i) ..................................................................8

34 Pa. Code § 231.82 .............................................................................................8

Fed. R. Civ. P. 56(a) ..............................................................................................3

Fed. R. Civ. P. 56(c) ..............................................................................................3

Local Civil Rule 56.1 .............................................................................................2

Defendants, Han Dynasty, Inc. ("Han Dynasty Exton"), Han Dynasty Upper West Side Corp. ("Han Dynasty Upper West Side"), and Lung-Lung Shen Chiang (collectively "Defendants"), by and through their attorneys, Littler Mendelson, P.C., respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment on all claims asserted in Plaintiff's First Amended Complaint, dated October 19, 2018.  As set forth below, the record evidence demonstrates that no issues of material fact exist and Defendants are entitled to summary judgment as a matter of law.

## I.    PRELIMINARY STATEMENT[1]

Plaintiff Hsieh Liang Yeh ("Plaintiff"), a former Head Chef of Han Dynasty Exton who admittedly had more than 20 years of experience in the restaurant industry where he both owned and managed Chinese restaurants, filed this action alleging that he was misclassified as an exempt employee.  Plaintiff thus claims that he is entitled to unpaid overtime wages and other relief under the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), Pennsylvania Minimum Wage Act ("PMWA"), and Pennsylvania Wage Payment and Collection Law ("PWPCL").  Plaintiff further alleges that Defendants failed to provide him with wage statements and a wage notice in contravention of the NYLL.

Defendants now move for complete summary judgment, dismissing all of the claims asserted against them in Plaintiff's First Amended Complaint as a matter of law.  Based largely on Plaintiff's various admissions and his own deposition testimony, Defendants have established that Plaintiff satisfies the executive exemption under federal and applicable state law.  Specifically, Plaintiff was paid a salary above the applicable threshold, his primary duty was

---

[1]      Unless otherwise indicated, all exhibits referred to herein are annexed to the Declaration of William H. Ng ("Ng. Decl.") in Support of Defendants' Motion for Summary Judgment, dated August 16, 2019.

management of Han Dynasty Exton's kitchen operations, he customarily directed the work of two or more full-time employees, and his suggestions as to the hiring and firing of employees were given particular weight.

Moreover, the record evidence overwhelmingly demonstrates that Plaintiff was the Head Chef at Han Dynasty Exton, who was admittedly "in charge" of the kitchen and responsible for overseeing the restaurant's "back-of-the-house" operations.  Plaintiff readily admits that he was promoted to "Head Chef," and supervised and directed the work of other chefs, preps and dishwashers to ensure that all kitchen staff were performing their respective duties.  Plaintiff regularly performed managerial functions such as overseeing food quality and proper use of ingredients to meet restaurant standards; handling customer complaints; taking inventory and ordering food and supplies for the restaurant; interviewing and selecting candidates for vacant kitchen positions; and recommending employees to be hired/terminated.  At all times, Plaintiff's primary role was that of a manager, and thus, he was exempt from the overtime provisions of the FLSA, NYLL, PMWA, and the PWPCL.  Further, Han Dynasty Exton provided Plaintiff wage statements, and it was not obligated to provide Plaintiff a wage notice pursuant to the NYLL since he commenced his employment outside of New York state.  Because there are no genuine issues of material fact with respect to Plaintiff's claims, Defendants request that the Court grant summary judgment in favor and dismiss Plaintiff's First Amended Complaint in its entirety.

## II.    FACTUAL BACKGROUND AND STATEMENT OF UNDISPUTED FACTS

For narrative factual background and a full statement of the material facts as to which there is no genuine issue to be tried, the Court is respectfully referred to Defendants' Statement of Undisputed Material Facts ("DSMF") Pursuant to Local Civil Rule 56.1, dated August 16, 2019, which has been filed contemporaneously herewith.

### III.    ARGUMENT

#### A.    Summary Judgment Standard

Summary judgment should be granted when the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment should be awarded "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The opposing party then must cite specific parts of the record, such as depositions, documents, affidavits or declarations, and admissions, to demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(c); see also Celotex, 477 U.S. at 324.  In opposing a motion for summary judgment, a party "may not rely on mere speculation or conjecture as to the true nature of the facts," as "conclusory allegations or denials ... cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010).  To defeat a motion for summary judgment, the nonmoving party must provide "hard evidence," D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," Binder & Binder PC v. Barnhart, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted).

#### B.    Plaintiff's Various Wage Claims Are Partially Time-Barred and Jurisdictionally-Barred

As an initial matter, Plaintiff alleges in his First Amended Complaint that his employment began with Defendants "on or about November 02, 2014." See First Amended Complaint ("Am. Complaint"), Ng. Decl., Exhibit B, at ¶ 9.  Plaintiff's claims, however, are

subject to various statutes of limitations based on the filing of Plaintiff's original Complaint, filed on July 2, 2018. <u>See</u> Complaint, Ng. Decl., Exhibit A.

Claims brought under the Fair Labor Standards Act ("FLSA") are subject to a two-year statute of limitations, and at most a three-year of statute of limitations if a plaintiff can establish the violations of the FLSA were willful.  <u>See</u>, <u>e.g.</u>, <u>McLean v. Garage Mgmt. Corp.</u>, No. 09 CIV. 9325 DLC, 2012 WL 1358739, at *7 (S.D.N.Y. Apr. 19, 2012) (citing 29 U.S.C. § 255(a)).  An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." <u>Id</u>. (citing <u>Kuebel v. Black & Decker Inc.</u>, 643 F.3d 352, 366 (2d Cir.2011) (citation omitted)). "Mere negligence is insufficient." <u>Id</u>. (citing <u>Young v. Cooper Cameron Corp.</u>, 586 F.3d 201, 207 (2d Cir. 2009)).  Here, Plaintiff has not and cannot present any evidence to establish a willful violation of the FLSA in this action. The earliest Plaintiff's FLSA claims could have accrued is July 2, 2016, two years from the date of his original July 2, 2018 Complaint.  Accordingly, this Court should dismiss Plaintiff's FLSA claims that accrued prior to July 2, 2016.

Plaintiff's claims under the Pennsylvania Minimum Wage Act ("PMWA") and Pennsylvania Wage Payment and Collection Law ("PWPCL") are subject to a three-year statute of limitations. <u>See</u>, <u>e.g.</u>, <u>Cerutti v. Frito Lay, Inc.</u>, 777 F. Supp. 2d 920, 925 (W.D. Pa. 2011) ("The applicable statute of limitations under the PMWA is three years.); <u>Mattern & Assocs., L.L.C. v. Seidel</u>, No. CIV. 06-36-SLR, 2008 WL 4622421, at *2 (D. Del. Oct. 17, 2008) ("The statute of limitations for a PWPCL claim is three years.") (citing 43 Pa. Stat. Ann. § 260.9a(g)). Here, the earliest Plaintiff's PMWA and PWPCL claims could have accrued is July 2, 2015, three years from the date of his original July 2, 2018 Complaint.  Accordingly, this Court should dismiss Plaintiff's PMWA and PWPCL claims that accrued prior to July 2, 2015.

The New York Labor Law ("NYLL") has a longer statute of limitations, compared to the FLSA, PMWA, and PWPCL, at six years.  See, e.g., Perkins v. 199 SEIU United Healthcare Workers E., 73 F. Supp. 3d 278, 291 (S.D.N.Y. 2014) (citing N.Y. Lab. L. § 663).  Plaintiff did not work in New York state until allegedly April 22, 2016 (and allegedly stopped working in New York on June 7, 2016).  See DSMF ¶ 110.  Here, Plaintiff cannot recover for any claims under the NYLL before April 22, 2016 or after June 7, 2016 because Plaintiff worked outside of New York at all other times and did not perform any other work in New York.  See Rosales v. Low Bid, Inc., No. 17CV3183ADSSIL, 2018 WL 3468710, at *7 (E.D.N.Y. July 3, 2018), report and recommendation adopted, No. 217CV03183ADSSIL, 2018 WL 3468697 (E.D.N.Y. July 18, 2018) ("As the NYLL is silent about its extraterritorial application, courts in this Circuit have held that it does not apply to work performed outside of New York State.") (collecting cases).

**C.     Plaintiff's Overtime and Minimum Wage Claims Fail As A Matter of Law Because He Was Exempt Under Federal, New York and Pennsylvania Laws**

In his First Amended Complaint, Plaintiff makes perfunctory, unsupported allegations that he was subject to the overtime provisions of the FLSA, NYLL, PMWA and PWPCL. See Am. Complaint, Ng. Decl., Exhibit B, at ¶ 1. However, the undisputed evidence in this action demonstrates that Plaintiff was exempt from the overtime provisions of those statutes, pursuant to the executive exemption authorized under federal law, New York law, and Pennsylvania law. As such, there is no genuine issue of material fact that would preclude summary judgment in favor of Defendants as to Plaintiff's claims for overtime under the federal and state law.

Federal, New York, and Pennsylvania law each expressly provides a categorical exemption from mandatory overtime requirements for employees who, inter alia, work in a "bona fide executive, administrative, or professional capacity." See 29 U.S.C. 213(a)(1); N.Y.

- 5 -

Lab. Law. § 198(1-b) (McKinney); 43 Pa. Stat. Ann. § 333.105 (West).[2]  New York has adopted regulations which mirror the FLSA and, as such, overtime claims made under the NYLL are to be analyzed under the rubric applicable to claims under the FLSA. See, e.g., Martinez v. Hilton Hotels Corp., 930 F. Supp. 2d 508, 519 (S.D.N.Y. 2013) ("Because New York's overtime provisions mirror and/or expressly adopt federal wage law, federal courts evaluate New York's executive exemption by reference to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq., and its attendant regulations, set forth in the Code of Federal Regulations.").  Pennsylvania law also utilizes the same rubric as under the FLSA to analyze the applicability of exemptions. See, e.g., Paul v. UPMC Health Sys., No. CIV.A. 06-1565, 2009 WL 699943, at *8 (W.D. Pa. Mar. 10, 2009) ("The exemptions under both the FLSA and PMWA are identical…The decision with respect to plaintiff's FLSA claim is therefore dispositive of plaintiff's PMWA claim.").[3]

---

[2] As courts typically address exemptions to overtime violations under the FLSA and NYLL or PMWA together, for brevity, Defendants will analyze the executive exemption as applied to Plaintiff under the rubric of the FLSA and incorporates by reference this analysis for application to Plaintiff's unpaid wage claims under New York law and Pennsylvania law. See, e.g., Ramos v. Baldor Specialty Foods, Inc., 687 F.3d 554, 556 n.1 (2d Cir. 2012) (declining to engage in a separate analysis of New York state law claims because "like the FLSA, the NYLL 'mandates overtime pay and applies the same exemptions as the FLSA'") (citation omitted); Vanstory-Frazier v. CHHS Hosp. Co., LLC, No. CIV.A. 08-3910, 2010 WL 22770, at *9 (E.D. Pa. Jan. 4, 2010) (declining to engage in a separate analysis of Pennsylvania state law claims because "tests are sufficiently similar that the court's analysis regarding the FLSA exemptions also applies to the PMWA exemptions.").

[3] Notably, the relevant provisions of the PMWA establish a fixed minimum wage and overtime rates for employees. 43 Pa. Stat. Ann. § 333.104 (West). The PWPCL creates no right to compensation but merely creates a statutory right to enforce payment of compensation to which an employee is otherwise entitled. Weldon v. Kraft, Inc., 896 F.2d 793, 800–01 (3d Cir. 1990); see also Kelly-Myers v. Mercy Health Sys. of Se. Pennsylvania, No. CV 16-5194, 2017 WL 4347605, at *9 (E.D. Pa. Sept. 29, 2017) (finding that PWPCL "serves as an enforcement mechanism for employees whose employers have breached a contractual obligation to pay them wages...In the absence of a contractual right to overtime wages, the WPCL does not afford [plaintiff] a claim against [defendant]." (internal citation omitted); Kane v. Cook Bros. Companies, No. 3:08CV481, 2009 WL 179728, at *4 (M.D. Pa. Jan. 23, 2009) ("the PWPCL claim is viable only if plaintiff had a contract for the unpaid wages"). Here, Plaintiff has not alleged a contractual basis for a PWPCL claim, and, thus, Plaintiff cannot make out a claim

Notably, while in years past the federal courts have narrowly construed FLSA exemptions against employers, the Supreme Court recently held that the exemptions "are as much a part of the FLSA's purpose as the overtime-pay requirement" and has suggested courts have "no license to give the exemption anything but a fair reading." See Encino Motorcars, LLC v. Navarro, 138 S. Ct. 1134, 1142, 200 L. Ed. 2d 433 (2018); see also Vasto v. Credico (USA) LLC, 767 F. App'x 54, 56 (2d Cir. 2019) ("The FLSA is a remedial law, and its exemptions were previously narrowly construed to that end…But no longer.").

The FLSA does not define "bona fide executive, administrative, or professional" employment, and instead directs the Secretary of Labor to "define[] and delimit[]" those terms "from time to time by regulations." Ramos at 559. The applicable federal regulation in this matter provides that the executive exemption applies to employees who satisfy the following four criteria:

> (1) Compensated on a salary basis at a rate of not less than $455 per week;
> (2) Whose primary duty is management of the enterprise in which the
> employee is employed or of a customarily recognized department or
> subdivision thereof; (3) Who customarily and regularly directs the work of
> two or more other employees; and (4) Who has the authority to hire or fire
> other employees or whose suggestions and recommendations as to the
> hiring, firing, advancement, promotion or any other change of status of
> other employees are given particular weight.

29 C.F.R. § 541.100(a) (emphasis supplied).[4]  The determination as to whether an employee is

---

under the PWPCL.  Further, to the extent that Plaintiff contends that his classification as an exempt employee is based on some *de facto* or informal contract sounding in the PMWA, there can be no liability for unpaid overtime and minimum wage violations under the PWPCL because Plaintiff is exempt under the PMWA from any overtime obligations.  See, e.g., King v. Dolgencorp, Inc., No. 3:09-CV-00146, 2010 WL 9475736, at *17 (M.D. Pa. May 6, 2010), report and recommendation adopted, No. 3:CV-09-0146, 2010 WL 11678491 (M.D. Pa. June 18, 2010) (where plaintiff was properly classified as an exempt employee under the PMWA, summary judgment granted as against plaintiff's claims under the PWPCL).

[4] New York's executive employee exemption is interpreted similarly to the FLSA exemption, except that: (1) the minimum salary required to qualify for the exemption at the latest date in

exempt under the FLSA is "a mixed question of law and fact." <u>Pippins v. KPMG, LLP</u>, 759 F.3d 235, 239 (2d Cir. 2014) (citation omitted). "The question of how the employees spent their working time is a question of fact," whereas "[t]he question of whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law." <u>Id.</u>; <u>see also</u> <u>Krumholz v. Vill. of Northport</u>, 873 F. Supp. 2d 481, 487 (E.D.N.Y. 2012) ("[I]t is a strict question of law whether the activities and responsibilities of the employee, once established, exempt him or her from the FLSA's overtime requirements") (internal quotation omitted); <u>Goldman v. RadioShack Corp.</u>, No. CIV.A. 03-0032, 2006 WL 336020, at *4 (E.D. Pa. Jan. 23, 2006) ("How an employee spends his time is a question of fact, whether those activities exclude them from overtime benefits is a question of law.").

In the instant case, the undisputed facts clearly establish that Plaintiff qualified for the executive exemption under federal law as well as New York and Pennsylvania law.

           1.       **At All times, Plaintiff Was Compensated On A Salary Basis In Excess Of The Weekly Salary Threshold Requirements Under Federal Law And New York/Pennsylvania Law.**

It is undisputed that Plaintiff was compensated on a salary basis. <u>See</u> DSMF ¶ 43. The salary requirement under the FLSA is $455 per week, as set forth in 29 C.F.R. § 541.100(a); was $975 per week under the NYLL as of January 2018 (Plaintiff's latest date of employment either in New York or Pennsylvania), as set forth in 12 NYCRR § 146-3.2(c)(1)(i)(e)(1)(i); and $250 per week under the PWMA, as set forth in 34 Pa. Code § 231.82. Here, throughout the entirety

---

Plaintiff's employment was $975 per week; and (2) the employee must also customarily and regularly exercises discretionary powers. 12 NYCRR § 146-3.2(c)(1)(i)(e)(1)(i)). The Pennsylvania Bureau of Labor Standards has also promulgated a regulation that defines employment in a bona fide executive capacity. 34 Pa. Code § 231.82. This regulation sets forth both a "short" and "long" test for determining whether an employee qualifies as an exempt executive. <u>Id.</u> The short test is used for employees who are compensated on a salary basis at a rate of at least $250 per week. Under the short test, an employee qualifies as an executive if (1) his primary duty consists of the management of the enterprise and (2) includes the customary and regular direction of the work of two or more other employees. <u>Id.</u>

of Plaintiff's employment with Defendant Han Dynasty Exton, his salary was in excess of the FLSA/New York/Pennsylvania minimum weekly salary requirement.  From in or around June 2015 through June 2017, Plaintiff, as the Head Chef, initially received semi-monthly Company payroll checks in the amount of $2,300 per pay period ($4,600 monthly, $55,200 annually) which amounts to $1,150 each week. See DSMF ¶¶ 44–45.  From in or around June 2017 through January 2018 (end of Plaintiff's employment), Plaintiff received semi-monthly Company payroll checks in the amount of $2,500 per pay period ($5,000 monthly, $60,000 annually) which amounts to $1,250 each week. See DSMF ¶¶ 46–47.  Thus, Plaintiff's salary meet the weekly threshold requirement under federal and state laws.

2.     **Plaintiff Managed The Restaurant's Kitchen Staff.**

To meet the second prong of the executive exemption, an employee's primary duty must be in managing other employees. The term "managing" in the context of the executive exemption encompasses a broad range of activities, including but not limited to:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102. Importantly, to qualify for the exemption an employee need only perform *some* of these types of managerial duties, as the character of an employee's job is considered as a whole. See, e.g., Yesmin v. Rite Aid of N.Y. Inc., No. CV 10- 4157(ERK)(RER), 2012 WL 3871735, at *5, at *1 (E.D.N.Y. Sep 6, 2012).  Moreover, the regulation itself recognizes that

these are merely examples of "management," and are not exhaustive of the types of duties that may be considered. 29 C.F.R. § 541.102.

Here, the record evidence overwhelmingly demonstrates that Plaintiff managed Han Dynasty Exton's kitchen staff.  While Plaintiff may also have performed some non-exempt tasks in conjunction with his managerial responsibilities, it was Plaintiff, not another supervisor, who ultimately decided when and whether he would perform these non-exempt tasks.  Looking first at Plaintiff's managerial duties, the undisputed evidence from Plaintiff's deposition testimony alone firmly establishes that Plaintiff performed a number of duties that are wholly indicative of "management," including:

- interviewing and selecting of employees who he would recommend for hiring, see DSMF ¶¶ 56; 91–95;

- training of employees with respect to their roles in the kitchen and how to prepare Szechuan style dishes using Defendant Han Dynasty Exton's recipes/ingredients, see DSMF ¶ 53; 77 – 79

- overseeing any changes to the kitchen staff's schedule, see DSMF ¶¶ 54; 83;

- directing the work of employees, including, but not limited to, directing their speed and actions in preparing dishes and obtaining/preparing ingredients for dishes, and apportioning the work among the employees, see DSMF ¶¶ 62 – 67; 73–76;

- planning work to be done in the kitchen and determining the techniques to be used, see DSMF ¶¶ 70, 72, 79;

- appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status, see DSMF ¶¶ 90 – 100;

- handling employee complaints and grievances and mediating disputes between employees who worked under him in the kitchen, see DSMF ¶¶ 88–89; and

- determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold, including reviewing the kitchen's inventory and securing ingredients for the dishes to be prepared by the kitchen staff, see DSMF ¶¶ 104 – 108.

Moreover, Plaintiff was ultimately responsible for the overall success of the kitchen and personally resolved together with the front-of-the-house manager to customer complaints to ensure the customer was happy and that the customer received a corrected dish that met the restaurant's standards.  See DSMF ¶¶ 59; 101–103.  Thus, Plaintiff cannot genuinely dispute that he engaged in numerous management functions recognized by 29 C.F.R. § 541.102.

3.     **Plaintiff's Primary Duty Was Management.**

The regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). In determining an employee's primary duty, a court must consider all the facts in a case, "with the major emphasis on the character of the employee's job as a whole." Id. The Code of Federal Regulations identifies a list of non-exhaustive factors that a court should consider in determining the employee's primary duty, including: (1) the relative importance of the exempt duties as compared with other types of

duties; (2) <u>the amount of time</u> spent performing exempt work; (3) the employee's <u>relative freedom from direct supervision</u>; and (4) <u>the relationship between the employee's salary and the wages</u> paid to other employees for the kind of nonexempt work performed by the employee. <u>Id</u>. Because "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption," 29 C.F.R. § 541.106(a), federal regulations provide some illustrative examples of exempt executives who perform nonexempt work while discharging their duties. For example, an assistant manager in a retail establishment is not precluded from the exemption even if he performs nonexempt tasks, "such as serving customers, cooking food, stocking shelves and cleaning the establishment . . . if the assistant manager's primary duty is management." 29 C.F.R. § 541.106(b). The nonexempt tasks, such as serving customers and stocking shelves, can occur contemporaneously with supervising employees and directing their work. <u>Id</u>.

The undisputed evidence in this case clearly establishes that the aforementioned management functions were Plaintiff's "primary duty," as defined by 29 C.F.R. § 541.700(a).

### a. Relative Importance of Plaintiff's Management Duties Militates Towards a Finding That It Was His Primary Duty

Looking first at the relative importance of the Head Chef's duties, the Court in the Second Circuit hve stated when analyzing cases under the FLSA and the NYLL that the relative importance inquiry evaluates whether the restaurant could not operate successfully unless the purported managerial functions assigned to Head Chef were performed. <u>See, e.g</u>., <u>Tamayo v. DHR Rest. Co., LLC</u>, No. 14-CV-9633 (GBD), 2017 WL 532460, at *6 (S.D.N.Y. Feb 3, 2017) (<u>citing</u> <u>Donovan v. Burger King Corp</u>., 675 F.2d 516, 521 (2d Cir. 1982); <u>Scott v. SSP Am., Inc</u>., No. 09-CV-4399, 2011 WL 1204406, at *9, (E.D.N.Y. Mar. 29, 2011) ("Even when all reasonable inferences are drawn in [p]laintiff's favor, it is clear from her deposition admissions

that the success of [d]efendant's business was more dependent on Plaintiff's management duties than her other duties, the performance of which did not prevent her from continuing to manage her [department].").  Courts in the Third Circuit have stated same when analyzing cases under the FLSA and PMWA.  See, e.g., Itterly v. Family Dollar Stores, Inc., 606 F. App'x 643, 646 (3d Cir. 2015).

This standard is easily satisfied here. Plaintiff determined what food and other supplies were needed, ordered those supplies on a regular basis and ensured proper delivery of same, managed worked schedules, directed kitchen staff in the speed and quality of their work, among Plaintiff's many job responsibilities in the kitchen. See DSMF ¶¶ 50 – 57.  The restaurant would have come to a grinding halt and the central business of Defendant Han Dynasty Exton would have failed without a functioning kitchen and kitchen staff. Simply put, if there is no food or sufficiently supervised employees to prepare and serve it, there can be no restaurant sales and, in turn, no revenue being generated.  Clearly, Plaintiff's managerial duties as the Head Chef in a restaurant were of the utmost importance to the continued operation of the kitchen.

**b.      Time Spent Performing Exempt Work**

With respect to the second factor, the undisputed evidence demonstrates that Plaintiff's exempt duties were regular and re-occurring management functions that Plaintiff performed on a regular basis in the kitchen. See DSMF ¶¶ 50 – 57.

Plaintiff will likely attempt to create the appearance of a dispute on this point by perhaps arguing that he was actually engaged in non-exempt duties when he under made dishes using a wok and mixed sauces, and prepared side dishes with the help of another kitchen employee.  See DSMF ¶¶ 60–61.  However, the law is well-established that performance of such non-exempt duties is not inconsistent with the executive exemption, as managers often are required to multi-task and/or "jump in" to perform whatever needs to be done to ensure the overall profitability

and success of their department while still overall managing the larger working group. See, e.g., Scott, 2011 WL 1204406, at *10 ("[I]t is clear from the undisputed facts in the record, as well as Plaintiff's deposition testimony, that her principal value to Defendant's business was the management of her Units, even though she engaged concurrently in a substantial amount of nonexempt work."); Jackson v. Advance Auto Parts. Inc., 362 F. Supp. 2d 1323, 1335 (N.D. Ga. 2005).

Moreover, courts have roundly recognized that the exact amount of time that a plaintiff spent on non-exempt work is not dispositive of whether his "primary duty" was management. See 29 C.F.R. § 541.700 ("[t]ime alone . . . is not the sole test"); see also Grace v. Family Dollar Stores, Inc. (In re Family Dollar FLSA Litig.), 637 F.3d 508, 517 (4th Cir. 2011) ("We conclude that [plaintiff] was performing management duties whenever she was in the store, even though she also devoted most of her time to doing the mundane physical activities necessary for its successful operation."); Donovan, 672 F.2d at 226 ("one can still be 'managing' if one is in charge, even while physically doing something else. ... [A]n employee can manage while performing other work, and ... this other work does not negate the conclusion that his primary duty is management."); Scott, 2011 WL 1204406, at *8,*11 (although the court credited plaintiffs testimony that she spent 90% of her time performing non-exempt tasks, the court found that her "management duties were more important to the success of [d]efendant's business than her other duties" where she "continued to supervise her subordinates by 'multi task[ing]'"); Jackson, 362 F. Supp. 2d at 1335. (granting summary judgment to employer despite plaintiffs' testimony that they spent 90% of their time performing non-exempt work because "[p]laintiffs acknowledged at their depositions that while they were selling to customers, operating the register, or performing other incidental tasks, they were also still overseeing the other employees

in the store and making sure that the store was operating properly"). Rather, the critical focus is on whether the employee "remain[s] responsible for the success or failure of business operations under their management while performing the nonexempt work." 29 C.F.R. § 541.106(a). Accordingly, even if Plaintiff cooked food, performance of these duties does not negate a conclusion that his primary duty as Head Chef was management of the kitchen staff, as it was Plaintiff, not some other supervisor, who determined which such tasks needed to be performed and when. Indeed, the restaurant's owner testified that when a situation arose relating to the kitchen, she would go directly to Plaintiff to find out. See DSMF ¶ 68. While preparing food or engaging in other non-exempt tasks, Plaintiff, as the Head Chef, remained, at all times, ultimately responsible for the success of his kitchen and maintaining its "standards," which he repeated during his deposition testimony. See DSMF ¶¶ 77; 103.

> c.  **Plaintiff's Relative Freedom From Direct Supervision And Customarily And Regularly Exercised His Discretion As Head Chef**

Plaintiff oversaw all "back of the house" operations for Han Dynasty Exton. See DSMF ¶ 57. As noted *supra*, this included mediation of workplace disputes, reviewing employee performance, selecting ingredients for meals, directing the workflow of how meals are to be cooked and how the kitchen staff should be spending their time, assessing the quality of cooked meals, and handling customer complaints. See DSMF ¶¶ 59, 77-79, 88, 90, 100. Plaintiff was given free reign and discretion over how to respond to problems, such as staff working too slowly or bad ingredients and whether a dish complained-of by customers met Han Dynasty Exton's standards. See DSMF ¶¶ 40; 101 – 103.

Plaintiff's discretion and expertise in the proper functioning of Han Dynasty's kitchen was honed after working for over twenty years in the restaurant industry. See DSMF ¶¶ 21 – 31. Prior to starting at Han Dynasty Exton, Plaintiff owned and managed Chinese restaurant in

Chicago for five years. <u>Id</u>.

Plaintiff, along with restaurant manager who managed the "front-of-the-house" employees, reported directly to the owner of the restaurant, and seemingly only with respect to employee relations issues wherein Plaintiff would make employee performance assessments to Mr. Chiang. <u>See</u> DSMF ¶ 90.  There was no one who supervised his day-to-day work in the manner that Plaintiff managed the kitchen staff's day-to-day work. Rather, at all times, Plaintiff performed his duties relatively free from supervision.

### d.   The Relationship Between Plaintiff's Salary And The Wages Paid to Other Employees For The Kind Of Nonexempt Work

Here, with deference owed to Plaintiff as the Head Chef and his importance in the kitchen, Plaintiff was compensated at a substantially higher rate than that paid to any subordinate kitchen staff who reported to him.  *See* DSMF ¶¶ 48 – 49.  Given that this is a "difficult and intensive factual inquiry," some courts have deemed a determination of relative importance "inappropriate at summary judgment. <u>Tamayo</u>, 2017 WL 532460, at *6 (S.D.N.Y. Feb. 3, 2017) (<u>citing</u> <u>Carhuapoma v. New York Presbyterian Healthcare Sys., Inc</u>., No. 11 Civ. 8670, 2013 WL 1285295, * 11 (S.D.N.Y. Mar. 29, 2013)) (declining to undertake the analysis of the relationship between plaintiff's salary and the wages paid to other employees for the kind of nonexempt work).

Upon consideration of the record in this matter, a reasonable jury could not find that plaintiff's primary duty was anything other than management. As such, there is no genuine issue of material fact in dispute and Defendant is entitled to summary judgment as to this prong of the executive exemption analysis.

4.     **Plaintiff's Position As Head Chef Required Him to Regularly And Customarily Direct The Work Of The Kitchen Staff.**

The third prong of the executive exemption analysis requires that the employee must customarily and regularly direct the work of at least two or more other full-time employees or their equivalent. 29 C.F.R. 541.100(a)(3). In the instant case, Plaintiff regularly and customarily directed the work of the entire kitchen staff consisting of at least two to four full-time kitchen workers during the entirety of Plaintiff's employment. See DSMF at ¶¶ 51 – 52. Specifically, during Plaintiff's tenure with Han Dynasty Exton, the following full-time positions were positions Plaintiff supervised: Expo Chef, Appetizer Chef, Prep Chef, and Dishwasher. Id.  As such, this prong demonstrates the executive exemption standard is amply satisfied.

5.     **Plaintiff's Suggestions And Recommendations As To The Hiring And Firing of Kitchen Staff Were Heeded By The Owner**

A bona fide executive must have the authority to hire or fire other employees or the executive's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight. 29 C.F.R. 541.100(a)(4). "An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. 41.105. Further, the "hiring or firing or making recommendations" prong is read in the disjunctive, so plaintiff need not have authority to provide guidance in all areas. See, e.g., Preamble to the August 2004 U.S. Department of Labor Regulations ("An employee who provides guidance on any one of the specified changes in employment status may meet the section 541.100(a)(4) requirement.") (emphasis added). Here, Plaintiff admits that part of his duties included making recommendations regarding potential new hires for staff positions in the kitchen. See DSMF at ¶¶ 91 – 99.  In fact, Plaintiff recalled that he was responsible for

making the recommendation to hire, and to later fire, an employee.  Id.

As demonstrated herein, Plaintiff satisfied the statutory and regulatory requirements for exemption from the overtime pay requirements under federal law and New York and Pennsylvania law. Plaintiff cannot offer evidence to the contrary and Defendants is entitled to summary judgement on Plaintiff's claims of unpaid overtime wages as set forth in Plaintiff's First Amended Complaint.

### D.   Plaintiff's Claims Under the NYLL For Wage Statement Violations Must Be Dismissed Because Plaintiff Received Wage Statements

NYLL § 195(3) requires that an employer "furnish each employee with a statement with every payment of wages" listing certain enumerated information.  Plaintiff alleges, in true boilerplate fashion, that Defendants did not provide him wage statements as required by NYLL 195(3).  See Am. Complaint, Ng Decl., Ex. B, at ¶¶ 182, 185.  But Plaintiff's allegations have been flatly refuted by the record evidence in this matter.  First, the "wage statement" requirement under Section 195(3) only applied to Plaintiff during the limited time period when he allegedly worked in New York, from April 22, 2016 to June 7, 2017.  Second, and fatal to Plaintiff's claim, it is undisputed Plaintiff received wage statements compliant with Section 195(3) during this limited time period.  See DSMF at ¶ ____.  Accordingly, Plaintiff's claim that Defendants failed to provide wage statements must be dismissed.

### E.   Plaintiff's Pay Rate Notice Claim Must Be Dismissed Because Defendants Were Not Obligated To Provide A "New Hire" Wage Notice To Plaintiff For Time Spent Working In New York

Plaintiff has alleged that Defendants did not provide him a wage notice, as required by NYLL § 195(1)(a) (see Am. Complaint, Ng. Decl., Exhibit B, at ¶¶ 177 – 181). However,

§ 195(1)(a) sets forth in pertinent part that employers must provide the wage notice[5] "at the time of hiring."  N.Y. Lab. Law § 195(1)(a) (McKinney).  Plaintiff was hired by Defendant Han Dynasty Exton in January 2015.  See DSMF at ¶ 34.  As Plaintiff was hired outside of New York in 2015 (and remained employed by/was paid by Defendant Han Dynasty Exton even while in New York), recognizing the limited extraterritorial application of the NYLL outside of New York State (discussed *supra*), Defendant Han Dynasty Exton was not required to provide a wage notice to Plaintiff pursuant to the New York Labor Law when he commenced employment in Defendant Han Dynasty Exton's location in Exton, Pennsylvania.  The Court of Appeals has recognized the strictly local nature of the NYLL, explaining that "New York's Labor Law is a local regulation enacted to protect the health and safety of its workers." Cammon v. City of New York, 95 N.Y.2d 583, 589–90 (2000).

Moreover, even if Defendant Han Dynasty Exton was required to provide a wage notice to Plaintiff when he worked for several weeks in New York in 2016, the NYLL provides for no liability where an employee has timely received all compensation owed to him:

> In any action or administrative proceeding to recover damages for violation of paragraph (a) of subdivision one of section one hundred ninety-five of this article, it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or article nineteen or article nineteen-A of this chapter to the employee who was not provided notice as required by subdivision one of section one hundred ninety-five of this article […]

---

[5] Pursuant to NYLL § 195(1)(a), the notice must contain the following "information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary."

N.Y. Lab. Law § 198(1-b) (McKinney).   Defendants pleaded this defense expressly as an affirmative defense in their Answer.  See Answer, Ng. Decl., Exhibit C, at ¶ 21.

Accordingly, regardless of whether Plaintiff was provided the statutorily-required wage notice, any such technical violation of the statute is wholly immaterial since Plaintiff received timely payment of all his wages on a semi-monthly basis for the entirety of his employment with Defendant Han Dynasty Exton, and these payments were always in the correct amount owed to him.  See DSMF at ¶ 43.   Thus, Plaintiff's claim for violation of the NYLL's wage notice obligations must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment and dismiss Plaintiff's claims in their entirety, with prejudice, and grant Defendants such other and relief as this Court deems just and proper.

Date:   August 16, 2019
         Melville, New York

/s/ *William H. Ng*
William H. Ng
Sanjay V. Nair
Kevin K. Lam
LITTLER MENDELSON, P.C.
290 Broadhollow Road, Suite 305
Melville, NY 11747
631.247.4700
wng@littler.com
snair@littler.com
kyam@littler.com

*Attorneys for Defendants*
   *Han Dynasty Inc., Han Dynasty Upper West*
   *Side Corp. and Lung-Lung Shen Chiang*